**Opinion issued December 12, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01044-CR

———————————

**DARRELL JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 10DCR055488**

---

## MEMORANDUM OPINION

Appellant, Darrell Jackson, was charged by indictment with robbery.[1]

Appellant pleaded not guilty. The jury found him guilty and assessed punishment

---

[1]  *See* TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2011), § 31.03(a) (Vernon Supp. 2013).

at 4 years' confinement.  In one issue on appeal, appellant argues the evidence was insufficient to establish he was guilty under the law of parties.

We affirm.

## Background

In July 2010, complainant, J.R., was 14 years old.  She was friends with appellant.  J.R. was not normally allowed to stay home alone while her parents were working.  Because of various plans for later that day, however, J.R.'s parents allowed her to stay home alone on July 21, 2010.  Despite rules not allowing boys over while she was at home alone, J.R. invited appellant over that day.

On at least two previous occasions, J.R. had invited appellant over to her house while her parents were away.  Appellant had invited other friends to come over as well on those occasions.  They would play video games and hang out together.  J.R. would make the boys food to eat.

On July 21, appellant spent time using his phone while over at J.R.'s house.  Around 11:30 that morning, J.R. heard the doorbell ring.  She went to the door and looked out to see who was there.  She could not see who was at the door and decided not to answer the door.

Appellant became insistent that J.R. answer the door.  Despite her protests, appellant pushed J.R. aside and opened the door.  Two men wearing ski masks came into the house.  They walked past appellant, knocked J.R. to the ground,

2

duct-taped her hands behind her back, and wrapped duct tape around her eyes. The assailants told her that if she moved, they would shoot her. They then moved her into the downstairs bathroom.

From the bathroom, J.R. could hear the men moving through the house, breaking some items. After she was sure the men had left, she ran from the house over to a neighbor's house. The neighbor called the police.

Terry Smith was one of the men involved in the robbery. He testified at trial that he was with Reginald Faultry that day. The evidence at trial established that Faultry and appellant had been communicating with each other by phone throughout the morning before the robbery. Smith testified that he and Faultry had planned to look for jobs that day, but the plan changed to go to J.R.'s house. Once at the door, Smith learned that they were going to rob J.R. Smith explained that he and Faultry were high on marijuana and Xanax at the time.

After wrapping duct tape around J.R. and placing her in a bathroom, Smith and Faultry went through the house, taking valuable items, and putting them in Smith's car. Smith testified that appellant helped load things into the car. Smith and Faultry left in the car and took the items to Smith's cousin's house.

After the robbery, appellant and Faultry went to another friend's house. At the house, appellant and Faultry bragged about "hitting a lick" and doing a "janky mission." Testimony at trial from a number of witnesses established that "hitting a

3

lick" means stealing something and that doing a "janky mission" means committing some sort of crime.

The evening after the robbery, Smith had a long conversation with his mother about what he had done. He came to regret his involvement in the robbery. The next morning, he went to J.R.'s house to apologize and to assist in returning the stolen items. No one was at home at the time. Smith sat down outside the front door and began to cry.

R. White, a detective with the Fort Bend County Sheriff's Office, was in the neighborhood at the time. He was going door to door, attempting to find any witnesses to the robbery of J.R.'s home. He saw Smith drive up to J.R.'s house, knock on the door, and begin to cry. Detective White went over to the house to talk to Smith. Smith confessed to his involvement in the robbery and took Detective White to his cousin's house to recover what remained of the stolen items.

## Law of Parties

In his sole issue, appellant argues that there is insufficient evidence to establish that the law of parties applied to him.

### A.    Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge

as a legal or a factual sufficiency challenge. *See Ervin* v. *State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks* v. *State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Ervin,* 331 S.W.3d at 54. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443

U.S. at 319, 99 S. Ct. at 2789; *Clayton* v. *State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton,* 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell* v. *State,* 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.    Analysis**

Section 7.02 of the Texas Penal Code provides, in pertinent part,

(a)    A person is criminally responsible for an offense committed by the conduct of another if:

    (1)    acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

    (2)    acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

    (3)    having a legal duty to prevent commission of the offense and acting with intent to promote or assist its

6

commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02(a) (Vernon 2011).  This is commonly referred to as the law of parties.

To establish guilt under the law of partie,s as it pertains to this case, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose.  *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Ahrens v. State*, 43 S.W.3d 630, 633–34 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).  In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense.  *Ransom*, 920 S.W.2d at 302; *Ahrens*, 43 S.W.3d at 634.  Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction.  *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).  Circumstantial evidence may also prove party status.  *Ransom*, 920 S.W.2d at 302.

The evidence at trial established that appellant was communicating with Faultry by phone.  When J.R. refused to open the door after Faultry and Smith

knocked, appellant pushed her out of the way, and opened it despite her protests. Smith testified that appellant helped load the stolen goods into Smith's car. Appellant later bragged to friends that he and Faultry had stolen some items. This testimony is more than adequate under the *Jackson* standard of reivew to establish that, "acting with intent to promote or assist the commission of the offense," appellant aided Smith and Faultry in the commission of the robbery.

We overrule appellant's sole issue.

### Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

8